[No. B097551. Second Dist., Div. Four. Aug. 12, 1996.]

FIREMAN'S FUND INSURANCE COMPANIES, Plaintiff and Respondent, v.
JOHN D. YOUNESI et al., Defendants and Appellants.

**COUNSEL**

Quisenberry & Barbanel, John N. Quisenberry, Brian S. Kabateck, David C. Parisi, Gaims, Weil, West & Epstein and Jeffrey B. Ellis for Defendants and Appellants.

Milton J. Silverman, Sonnenschein, Nath & Rosenthal, Ronald D. Kent, Thomas Holden and Anthony Capobianco for Plaintiff and Respondent.

**OPINION**

**ARANDA, J.*—**

### PROCEDURAL HISTORY

Appellants John D. Younesi, Novian, Novian & Younesi, Farad Novian, Farid Novian and Ceradyne, Inc., appeal from an order denying a motion to compel arbitration pursuant to Civil Code section 2860, subdivision (c). On February 16, 1996, an alternative writ of mandate was issued by this court and a temporary stay was ordered on the commencement of trial until further order in case No. B097511. A motion to consolidate argument on the appeal in this matter, case No. B097551, with the appeal of the same parties in case No. B092110 was granted May 13, 1996. Since the related appeal had been fully briefed and was an adequate remedy at law for appellate review, the writ in No. B097511 was dismissed on July 1, 1996.

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## Factual Summary

The facts are essentially undisputed. Ceradyne is a publicly traded corporation specializing in the design and manufacturing of advanced technical ceramic products for the defense and commercial industries. Several individuals sued Ceradyne for injuries resulting from exposure to beryllium oxide which was in use at Ceradyne's manufacturing facility. The defense of these actions (the Beryllium Actions) was tendered to Ceradyne's insurance carriers, including respondent Fireman's Fund Insurance Companies (FFI).

Appellants, John Younesi and his law firm, Novian, Novian & Younesi (hereinafter collectively referred to as Younesi), were retained by Ceradyne as defense counsel in the Beryllium Actions. When FFI undertook the defense of Ceradyne, it did so pursuant to a reservation of rights. FFI would only provide coverage if bodily injuries occurred during its policy coverage and only within certain policy limits. The nature of the rights reserved by FFI created an opportunity for defense counsel to affect coverage under the FFI policies to the detriment of Ceradyne. This conflict allowed Ceradyne to select independent counsel (*Cumis* counsel)[1] pursuant to Civil Code section 2860, subdivision (c).[2]

FFI undertook to retain Younesi for Ceradyne in accordance with FFI's requirements for independent counsel. Although respondent FFI is now claiming that no decision has been made on whether Younesi was in fact retained by FFI as independent counsel for Ceradyne, the factual record is clear. On August 31, 1990, Christine B. Tipton, senior claims representative of FFI's environmental claims facility, wrote to Ceradyne, setting forth FFI's terms for payment. On October 23, 1990, Tipton wrote Younesi confirming his appointment as *Cumis* counsel, indicating that the appointment was under Civil Code section 2860, subdivision (c). Her letter stated: "Additionally,

---

[1]*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494].

[2]Civil Code section 2860, subdivision (c) states: "When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. This subdivision does not invalidate other different or additional policy provisions pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees. Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute."

pursuant to California Civil Code Section 2860(c), an insurer's obligation to pay fees to independent counsel is limited to rates which are actually paid by the insured to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claims arose or is being defended." After some initial reluctance by Younesi to FFI's terms, Younesi agreed to FFI's requirement and hourly rate schedule.

On November 9, 1990, Linda Klamm, insurance coverage counsel for FFI, wrote to Younesi indicating that his hourly rate would be $110 pursuant to Civil Code section 2860, subdivision (c). When Younesi continued to protest this rate, it was made clear to him by Klamm in a letter dated January 4, 1991, that arbitration on the issue was available: "If you wish to arbitrate this issue as provided in California Civil Code Section 2860(c), Fireman's Fund will cooperate with you to resolve this matter."

For the next two and a half years, Younesi billed FFI for the legal services performed by the law firm. FFI paid the firm in accordance with their agreement. FFI caused Younesi's billings to be audited. The audit was concluded in 1993 and caused FFI to believe that Younesi was engaged in fraudulent billing practices. FFI fired Younesi on June 25, 1993. FFI filed a complaint against Younesi on October 5, 1994, case No. BC100415, alleging six causes of action, including excessive and duplicate billings of about $160,000, fraud, negligent representation, breach of contract, conversion, malpractice and violation of the California unfair trade practices act.

Younesi retained the law firm of Quisenberry & Barbanel to defend the FFI suit and file a cross-complaint. Younesi's cross-complaint against FFI demanded fees and costs outstanding as of June 28, 1993.

On October 6, 1994, Quisenberry & Barbanel (hereinafter Q&B) filed a cross-complaint in intervention on behalf of Ceradyne against FFI for the fees it had paid and would continue to pay Younesi as independent counsel in the then ongoing Beryllium cases. The Beryllium Actions have now been concluded.

On April 4, 1995, FFI's motion to disqualify Q&B from representing Ceradyne or that Q&B be required to elect representing either Ceradyne or Younesi, but not both, was granted by the trial court. FFI alleged that it had become impossible for FFI to provide Ceradyne with privileged discovery to which it was entitled, without giving it to Q&B and thereby to Younesi, who had no right to such information. The trial court then stayed the entire action pending the resolution of the issue of new counsel. Q&B appealed the

decision on behalf of both Younesi and Ceradyne. This issue is discussed in the separate opinion in *Fireman's Fund Ins. Companies v. Younesi* (July 22, 1996) B092110 [nonpub. opn.].

On May 18, 1995, Younesi filed a motion to lift the stay for the limited purpose of ordering arbitration. The trial court denied the motion on June 2, 1995.

On August 31, 1995, Younesi filed a motion pursuant to Civil Code section 2860, subdivision (c) and Code of Civil Procedure section 1281.2,[3] to compel arbitration of FFI's complaint. The motion was denied by the trial court on September 21, 1995. On November 1, 1995, Younesi filed notice of appeal and on November 20, 1995, Younesi filed a writ petition (case No. B097511). Since this appeal has been fully briefed and is an adequate remedy at law, the writ was dismissed on July 1, 1996.

ISSUES

1. Is the order denying arbitration appealable?

2. Does a complaint which alleges causes of action for fraud, malpractice and conversion take it beyond the scope of Civil Code section 2860, subdivision (c)'s arbitration provision?

3. Was Younesi's motion to compel arbitration filed On August 31, 1995, an improper motion for reconsideration?

4. Has Younesi waived the right to arbitrate?

DISCUSSION

I

*Is the Order Denying Arbitration Appealable?*

█ Code of Civil Procedure section 1294, subdivision (a) is unambiguous: "An aggrieved party may appeal from: (a) An order dismissing or

---

[3]Code of Civil Procedure section 1281.2 reads in its relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court *shall* order the petitioner and respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement." (Italics added.)

denying a petition to compel arbitration." "An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a); *Boys Club of San Fernando Valley, Inc.* v. *Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1270 [8 Cal.Rptr.2d 587] [8 Cal.Rptr.2d 587].)" (*Engineers & Architects Assn.* v. *Community Development Dept.* (1994) 30 Cal.App.4th 644, 650, fn. 1 [35 Cal.Rptr.2d 800].)

Herein, appellants' motion to compel arbitration was based on statute rather than contract. Specifically, appellants cite Civil Code section 2860, subdivision (c). It is no longer necessary to discuss a distinction between statutory and contractual schemes to enforce arbitration. "In light of *Moncharsh*'s thorough discussion of the legislative history of this statutory scheme (*Moncharsh* v. *Heily & Blase* [1992] 3 Cal.4th 1 at pp. 16-26 [10 Cal.Rptr.2d 183, 832 P.2d 899]), it is clear that the Legislature would have no reason to distinguish between the different forms of contractual arbitration (those stemming from private contract and those stemming from statutory mandate) because it wished to encourage all such arbitration to the greatest extent possible." (*Porter* v. *Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1289 [51 Cal.Rptr.2d 338].)

Likewise, in view of legislative intent, for purposes of determining whether the case is appealable, there is no need to distinguish in the instant case. We find the denial of the motion to compel arbitration appealable even though it is based upon statutory language.

## II

### *Is the Matter Before the Trial Court Subject to Arbitration?*

Appellants' motion to compel arbitration was denied by the trial court. Respondent FFI argues that the matter is not subject to arbitration because its complaint sets forth numerous causes of action, including fraud and malpractice, which are not subject to arbitration. FFI further alleges it is due punitive and exemplary damages. FFI also notes in its brief that it has an absolute right to a jury trial on the fraud cause of action. (*Southern Pac. Transportation Co.* v. *Superior Court* (1976) 58 Cal.App.3d 433, 436 [129 Cal.Rptr. 912].) It further repeatedly claims that "[t]his case is about a deceptive, dishonest and manipulative scheme perpetrated by John Younesi and his law firm . . . designed to net hundreds of thousands of dollars. This is not a mere fee or billing dispute."

Appellants Younesi and Ceradyne counter that, if this court accepts FFI's position, all any party litigant who wants to circumvent arbitration need

do in the future is to simply add "a magic" cause of action for fraud to any billing dispute and they would thereby escape arbitration. We disagree.

It is not an easy matter to simply add "a magic" fraud cause of action. Fraud is not a cause of action which is "magically added" and rarely disputed. Fraud requires that specific facts be pled and they are commonly contested by demurrer. Pleadings which allege causes of action which may lead to punitive and exemplary damages are nearly always strenuously opposed by party litigants. Moreover, if there is a legitimate basis to assert a claim for fraud it cannot be dismissed as a simple "magic" tactic. If the claim is not legitimate that will be demonstrated at trial, producing adverse consequences for the claimant.

Herein, in any analysis that is made, clearly attorney billings are a central issue. These billings resulted as a consequence of Ceradyne having retained Younesi to defend the Beryllium Actions. After Ceradyne tendered the cases to FFI, FFI undertook the defense of the matters pursuant to a reservation of rights letter. When FFI retained Younesi, they did so because *Cumis* counsel was required under their policy pursuant to Civil Code section 2860, subdivision (c). FFI insisted on paying Younesi according to their *Cumis* counsel rate. FFI demanded *Cumis* counsel information from Younesi. When Younesi balked at FFI's payment rate, FFI tendered an offer to arbitrate the hourly rate. For two and a half years FFI treated Younesi as *Cumis* counsel for Ceradyne. Yet, we note that at this late date, FFI is still asserting that Younesi was not *Cumis* counsel at all.

Even so, this is not merely a dispute about billing rates. "If the only issue in dispute truly was the *amount* of *Cumis* counsel fees the insurance company owed, it would be improper, in most circumstances at least, for a trial court to stay the arbitration proceedings mandated under section 2860 in order to allow a judicial proceeding *in the California courts* to decide that issue and that issue alone." (*Caiafa Prof. Law Corp.* v. *State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 803 [19 Cal.Rptr.2d 138], italics in original.)

But, *Caiafa* held, as we do here, that a full scale fraud trial is a better forum for deciding the full range of issues raised by the plaintiff's fraud and malpractice allegations. FFI alleges that Younesi's conduct was part of a fraudulent scheme to cheat insurance companies of thousands of dollars, that the law firm converted property, and that the firm engaged in malpractice and misrepresentation.

Actions to recover damages for fraud are at law in which a right to a jury trial exists. (Cal. Const., art. I, § 16; *Raedeke* v. *Gibraltar Sav. & Loan Assn.*

(1974) 10 Cal.3d 665, 671 [111 Cal.Rptr. 693, 517 P.2d 1157]; *Rowe* v. *Superior Court* (1993) 15 Cal.App.4th 1711, 1718-1719 [19 Cal.Rptr.2d 625]; *Bank of America* v. *Lamb Finance Co.* (1956) 145 Cal.App.2d 702 [303 P.2d 86].) Compelling arbitration would effectively violate FFI's constitutional right to have a jury determine the disputed facts in these causes of action. ■ "The right to a trial by jury is a right to have the jury try and determine *issues of fact*." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 84, p. 85, original italics.) It is because "[t]he jury as a fact-finding body occupies so firm and important a place in our system of jurisprudence that any interference with its function in this respect must be examined with utmost care." (*Dorsey* v. *Barba* (1952) 38 Cal.2d 350, 356 [240 P.2d 604].)

■ We note that in all cases of doubt, the doubt should be resolved in favor of trial by jury. (*Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 265 [73 Cal.Rptr. 127].) Therefore, we conclude that the language of Civil Code section 2860 can only be interpreted to limit the scope of arbitrable disputes to those in which only the amount of legal fees or the hourly billing rates are at issue.

In view of our holding, the additional issues are moot.

CONCLUSION

We find no abuse of discretion by the trial court. The denial of the motion to compel arbitration is affirmed. The matter is remanded to the trial court for further proceedings. Costs to respondent.

Vogel (C. S.), P. J., and Hastings, J., concurred.

A petition for a rehearing was denied August 30, 1996, and appellant's petition for review by the Supreme Court was denied November 13, 1996.