**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

MEGHAN A. ADAMS
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0634

March 8, 2024

TO: COUNSEL OF RECORD

**RE:** *Mattel, Inc. v. XL Insurance America, Inc., et al.*
**C.A. No.: N23C-01-042 MAA CCLD**

Dear Counsel:

On January 17, 2024, the court-appointed Special Magistrate, Peter B. Ladig, Esquire, issued his decision on the record regarding, among other things, Plaintiffs' Renewed Motion to Require ACE Property and Casualty Insurance Company[1] to Comply with this Court's Order that ACE PC is Obligated to Defend and Indemnify Plaintiffs and for Sanctions.[2]

Specifically, Plaintiffs argue that, after the Court ordered Chubb to continue covering Plaintiffs' defense costs, Chubb lost the ability to control the rates it must pay to Plaintiffs' defense counsel.[3] According to Plaintiffs, Chubb must pay the

---

[1] ACE Property and Casualty Insurance Company is commonly referred to by all parties in this litigation as "Chubb," so the Court will follow suit.

[2] *Mattel, Inc. et al. v. XL Ins. Am., Inc., et al.*, C.A. No. N23C-01-042, Meet and Confer Proceedings (Jan. 17, 2024).

[3] D.I. 305, Plaintiffs' Notice of Exception (hereinafter, "Pls.' Exception") at 3; D.I. 240, Plaintiffs' Renewed Motion to Require Ace Property and Casualty Insurance Co. to Comply with this Court's Order that Ace PC is Obligated to Defend and Indemnify Plaintiffs and for Sanctions (hereinafter "Pls.' Motion") at 3–5.

1

rates negotiated by Starr Indemnity and Liability Co instead of those Chubb had negotiated for itself.[4]  Starr, the excess insurer immediately above Chubb in the relevant tower of insurance, had negotiated its rates in the interim between Chubb cutting off defense coverage on the basis of exhaustion in April 2023 and the Court ordering Chubb to continue its coverage in August 2023.  The Starr-negotiated rates are substantially higher than those Chubb paid before it claimed exhaustion.

Plaintiffs contend that during the timeframe after which Chubb believed it had exhausted its obligations and the time the Court ordered it to continue its obligation, Chubb was in breach of the policy at issue.[5]  Thus, according to Plaintiffs, "[u]nder clear California precedent, that breach of the defense obligation results in Chubb's forfeiture of its rights under [S]ection 2860 of the California Civil Code, including control over independent counsel's rates."[6]

Special Magistrate Ladig, after considering briefing and oral argument by the parties, disagreed with Plaintiffs and issued the following Recommendation and Report on the record:

> I'm going to recommend that Chubb pay its negotiated rates and not the Starr negotiated rates, subject, however, to any market-based adjustments to which

---

[4]  Pls.' Motion at 3.
[5]  Pls.' Exception at 3.
[6]  *Id.* (citing Pls.' Motion at 5 (citing *Intergulf Dev. LLC v. Superior Ct.*, 107 Cal. Rptr. 3d 162, 165 (Cal. Ct. App. 2010); *Janopaul + Block Cos. V. Superior Ct.*, 133 Cal. Rptr. 3d 380, 387 (Cal. Ct. App. 2011); *J.R. Mktg., L.L.C. v. Hartford Cas. Ins. Co.*, 158 Cal. Rptr. 3d 41, 49 (Cal. Ct. App. 2013), *aff'd in part, rev'd in part*, 353 P.3d 319 (Cal. 2015))).

the law firms may be entitled to negotiate under the policy, a statute or a reservation of rights or any other source of authority.

In other words, I am not making a recommendation that these rates are proper or that they should be fixed in perpetuity. Mattel or any of the law firms may seek and upward adjustment on these rates. And this recommendation and whatever order ends up getting entered shall not be preclusive of their ability to do so.

I reach this conclusion for a couple of reasons. First I'm certainly not an expert on Section 2860. The way I read it through is that an insured can't refuse to defend thereby requiring the insured to hire its own counsel and then argue that the insured pay the counsel too much when it's ultimately determined that the insurer had an obligation to defend. . . .

And this is I think a very different kind of case than the ones that were relied upon by the plaintiffs. I'm not convinced necessarily that it would be considered a breach. . . . I think if the Court finds later that Chubb did exhaust its obligations then it would in theory be entitled to the protections of 2860 on the rates that it paid.

And I don't think that it's appropriate for me right now to reach that conclusion that there are some different set of rates or that it is barred from challenging rates.

And then, secondly, I'm not convinced that requiring Chubb to pay the rates that Starr negotiated will be appropriate. Just as a practical matter, I think we've discussed the kind of collateral actions that might spin out of this if for some reason Chubb pays Starr rates now but then is later found to not have to do so.

To me it seems to be far easier to keep everything in-house, so to speak, and not create a problem where there at least to me is not a clear basis to do so.[7]

---

[7] Pls.' Exception, Ex. J at 48:3–51:2.

Plaintiffs filed an exception to the Report.[8]  For the reasons that follow, the exception is overruled.

Pursuant to Superior Court Civil Rule 122(c) and the Order of Reference in this matter, "[r]eview of any order of the Special Magistrate shall be *de novo* on the record unless otherwise proved by the Court's rules or by statute."[9]

Here, the exception rests principally on the premise that the Court, in granting Plaintiffs summary judgment on Count IV of their Amended Complaint, found Chubb to be in breach of the policy at issue.  This is an incorrect interpretation of the Court's August 21, 2023 summary judgment ruling on the record.

*First*, Count IV of the Amended Complaint, on which the Court granted summary judgment, did not seek a declaration of a breach.  Count IV, rather than requesting a declaration that Chubb *breached* the policy, requested a "declaration as to whether Chubb has a duty to defend Plaintiffs in the Claims given the ongoing dispute over exhaustion of policy limits."[10]  Similarly, in the corresponding Prayer for Relief, Plaintiffs seek "[a] declaration as to whether Chubb has a duty to defend Plaintiffs in the Claims given the ongoing dispute over exhaustion."[11]

---

[8]  *See generally* Pls.' Exception.
[9]  D.I. 282, Order of Reference ¶ 11; Superior Court Civil Rule 122(c) ("A report by a [Special Magistrate] is subject to review by the Court *de novo*.").
[10]  D.I. 86, Amended Complaint ¶ 71.
[11]  *Id.* at Prayer for Relief ¶ (i).

4

The Court granted Plaintiffs' Motion for Summary Judgment on Count IV, finding that, under established California law,[12] Chubb was obligated to resume defending and indemnifying Plaintiffs. That obligation, though, is not derived strictly from the language of Chubb's policy but from California precedent that imposes a continuing duty on insurers until any disputes as to the insurer's contractual obligations are resolved. In other words, Chubb's cessation of coverage ran afoul of California law, not necessarily the terms of Chubb's policy. The Court did *not* find that Chubb breached the policy.[13]

*Second*, as the Special Magistrate recognized in his ruling, the cases cited by Plaintiffs do not support their position. Plaintiffs' three primary authorities— *Intergulf*, *Janopaul*, and *J.R. Marketing*—each involved a situation where the insurer failed to defend the insured from the outset.[14] Here, in contrast, Chubb spent years covering Plaintiffs' defense before it purportedly exhausted its limit. That distinction is meaningful.

An insurer who refuses to participate timely in the defense of its insured naturally leaves control of the defense in the insured's hands. Allowing an unwilling

---

[12] *See Hartford Accident & Indem. Co. v. Superior Ct.*, 29 Cal. Rptr. 2d 32, 36 (Cal. Ct. App. 1994).

[13] Nothing in this decision should be interpreted by the parties as to any decision as to the merits regarding the remaining counts in the Amended Complaint.

[14] *Intergulf*, 107 Cal. Rptr. 3d at 164; *Janopaul*, 133 Cal. Rptr. 3d at 382; *J.R. Mktg.*, 158 Cal. Rptr. 3d at 45.

insurer to then wrest control from its insured midway through the underlying litigation risks disrupting the defense. Where, instead, the insurer initially covered defense costs but arguably ended its coverage prematurely, it is possible to simply return the parties to their previous positions. Here, Chubb erred under *Hartford* by failing to maintain the status quo. The corresponding remedy, at this point, is to restore the status quo. Plaintiffs do not cite to any language in Section 2860 or any case law that supports their contrary position.

*Finally*, the Court agrees with the Special Magistrate that forcing Chubb to pay the higher Starr-negotiated rates now would risk unnecessarily complex collateral actions. Plaintiffs could be correct that collateral litigation is inevitable in this particularly contentious matter.[15] Even still, to the extent it is consistent with other core principles, the Court will endeavor to avoid complicating any potential ancillary litigation. Proceeding as if Chubb breached its contractual obligations before that has been decided does not comport with that goal. Instead, doing so would add a layer of intricacy to any effort to restore Chubb to its proper position in the event that the Court ultimately decides Chubb did not breach its policy. No competing considerations offered by Plaintiffs justify that risk.

---

[15] *See* Pls.' Exception at 5.

For the foregoing reasons, the exceptions to the Special Magistrate's Report and Recommendation are OVERRULED.  The Report and Recommendation is hereby adopted in its entirety.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Meghan A. Adams*

Meghan A. Adams

cc:    Prothonotary